**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| LOUIS BEAUMONT and | ) | |
| BARBARA BEAUMONT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 07-CV-050-GKF-FHM |
| | ) | |
| FORTIS BENEFITS INSURANCE | ) | |
| COMPANY, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION

Before the Court is Plaintiffs' Motion to Remand for Lack of Subject Matter Jurisdiction [Docket No. 43]. For the reasons set forth below, the motion is granted.

## BACKGROUND

This case was originally filed in the District Court of Tulsa County on October 28, 2005. In their original petition, Plaintiffs allege they contracted with Defendants to purchase a policy of credit disability insurance, through which Defendants promised to pay Plaintiffs' minimum monthly credit card payments due on their First USA-BankOne credit card should Plaintiffs become disabled. Plaintiffs contend that Plaintiff Louis Beaumont became disabled on or around April 3, 2001, and subsequently filed a claim for disability insurance benefits. Plaintiffs claim that Defendants paid $8,914.70 in benefits, but failed to make those payments in a timely manner, which resulted in Plaintiffs being charged interest and late fees on their credit card account. Plaintiffs originally asserted claims for breach of contract and breach of the covenant of good faith and fair dealing, and sought actual and punitive damages "in excess of $10,000."

In their original Petition, Plaintiffs alleged they were residents of Tulsa County, Oklahoma.

On December 21, 2005, Plaintiffs filed an Application for Order Transferring Case, stating they had inadvertently filed in Tulsa County and that they were actually residents of Creek County.[1] Plaintiffs filed an Amended Petition correcting their residency allegations on January 5, 2006.[2] The judge granted an Order transferring the case to Creek County, Oklahoma, on January 5, 2006.  The state court clerk did not file the written order until January 10, 2006, however, the docket sheet reflects the order was entered on January 5, 2006, and the deputy court clerk closed the case to be transferred to Creek County on that date.

Plaintiffs filed a second amended petition on July 7, 2006, removing some Defendants and adding others.  The Second Amended Petition omitted the claim for breach of the covenant of good faith and fair dealing, while adding claims for breach of fiduciary duty, bad faith, and negligence. Plaintiffs also revised their claims against the banking defendants, claiming the banks improperly received compensation for the sale of credit insurance and wrongfully profited from the imposition of late fees and increased interest rates when the insurance defendants failed to timely pay policy benefits on Plaintiffs' behalf.  The Second Amended Petition seeks actual damages "in excess of Ten Thousand Dollars ($10,000) on each count," punitive damages in an amount "equal to the increased financial benefit derived by Defendants as a result of their wrongful conduct," pre- and post-judgment interest, costs, and attorneys' fees.

Defendants removed the case to this Court on January 22, 2007, claiming that both federal

---

[1] Plaintiffs live on West 71st Street, slightly over the county line into Creek County.

[2] Although the file-stamp on the Amended Petition is smeared and may appear to read January 8, 2006, as represented by Defendants, such is not the case.  January 8, 2006 was a Sunday, not a working court day.  Furthermore, the undersigned, while a state court judge, required Plaintiffs to amend their residency allegation in an Amended Petition prior to granting the motion to transfer on January 5, 2006.

question and diversity jurisdiction exists.  *See* 28 U.S.C. §§ 1331 and 1332.

**<u>DISCUSSION</u>**

Plaintiffs argue that the case should be remanded to state court for three reasons: (1) the notice of removal was untimely; (2) the case does not involve a federal question; and (3) the case does not satisfy the amount in controversy requirement of $75,000, pursuant to 28 U.S.C. § 1332(a).

Because "the propriety of removal is judged on the complaint as it stands at the time of the removal," *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488-89 (10th Cir.1991), the Court focuses its analysis on Plaintiffs' Second Amended Petition, filed July 7, 2006.

**A.      Timeliness of the Notice of Removal**

Plaintiffs first argue that Defendants' Notice of Removal was untimely because it was filed more than one year after commencement of the lawsuit.  This argument, however, raises a second timeliness issue with respect to Plaintiffs' Motion to Remand.  Namely, 28 U.S.C. § 1447(c) requires "motion[s] to remand the case on the basis of any defect other than lack of subject matter jurisdiction [to] be made within 30 days after the filing of the notice of removal under section 1446(a)."  Issues concerning the timeliness of the filing of notice of removal are *procedural* in nature, not jurisdictional.  *See Setzer v. Farmers Ins. Co.*, 185 Fed. Appx. 748, 752 (10th Cir. 2006)(citing *Huffman v. Saul Holdings Ltd. Partnership*, 194 F.3d 1072, 1076 (10th Cir. 1999).  Therefore, a motion to remand based upon the untimeliness of a notice of removal must be filed within 30 days after the filing of the notice of removal.

Here, Defendants filed their Joint Notice of Removal on January 22, 2007.  Plaintiffs did not file their Motion to Remand until June 27, 2007, well after the 30 days contemplated by § 1447(c) had passed.  Therefore, to the extent Plaintiffs urge remand on the basis of the untimeliness of

3

Defendants' Joint Notice of Removal, Plaintiffs' arguments are untimely and the Court must disregard that portion of Plaintiffs' Motion to Remand.

**B.     28 U.S.C. § 1441(a) and Jurisdictional Issues**

"Except as otherwise expressly provided. . . any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant. . . to the district court of the United States. . . embracing the place where such action is pending." 28 U.S.C. § 1441(a).  Original jurisdiction can exist either through diversity jurisdiction (28 U.S.C. § 1332) or federal question jurisdiction (28 U.S.C. § 1331).

Plaintiffs contend neither diversity nor federal question jurisdiction exist, making removal improper. The Court addresses each contention in turn.

**1.     Federal Question Jurisdiction**

In their notice of removal, Defendants claim the allegations made in Plaintiffs' Second Amended Petition amount to state-law usury claims which are preempted by the National Bank Act, 12 U.S.C. §§ 85, 86, and the Depository Institution Deregulation and Monetary Control Act, 12 U.S.C. § 1831d.  Based upon this purported application of federal law, Defendants contend that Plaintiffs' case presents a federal question.

In support of their argument, Defendants rely on *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003).  In *Beneficial Nat'l Bank*, the United States Supreme Court held that state usury laws were preempted by the National Bank Act, which governs the rate of interest that a national bank may charge.  Because of this preemption, a state court case containing state law usury claims arises under

4

federal law and may be removed to federal court.[3]  *Id.* at 11.

*Benefical Nat'l Bank*, however, involved a petition filed in state court that explicitly asserted state law usury claims.  The instant petition makes no such explicit claims.  Indeed, Plaintiffs assert in their Motion to Remand that they have not alleged and do not allege that the banking defendants in this case have committed usury or have violated any state or federal usury laws.  As a result, Defendants analogize the claims made in Plaintiffs' petition to usury claims, arguing Plaintiffs' claims are "in essence" claims of usurious interest.  This presents the question, therefore, of whether Plaintiffs' petition implicitly contains an usury claim.

"Usury" is defined as the taking of a greater premium for the use of money loaned than the law allows. *Brown v. American Nat'l Bank*, 197 F.2d 911, 915 (10th Cir. 1952) (citing *Midland Sav. & Loan Co. v. Tuohy*, 170 P. 244 (Okla. 1918).  Under Oklahoma law, "[u]sury is never presumed. A party in pleading usury assumes the burden of proving that there was a loan of money and that the contract for a loan was for a greater than the legal rate of interest." *Freed-Goodall Furniture Co. v. Morris Plan Co. of Oklahoma*, 152 P.2d 902, 903-04 (Okla. 1944). Additionally, there is no common law of usury under Oklahoma law, usury is solely a creature of statute. *Stockyards State Bank v. Johnston et al.*, 152 P. 585, 587 (Okla. 1966).

Having examined Plaintiffs' Second Amended Petition, the Court does not agree with Defendants' contention that it contains claims of usurious interest.  Interest rates are referenced in paragraphs twelve to fifteen of the petition, but not in the context of claims of usurious interest, to wit:

---

[3] Sections 85 and 86 of the National Bank Act and § 1831d of the Depository Institution Deregulation and Monetary Control Act are virtually identical.  The former applies to national banks while the latter applies to state-chartered federally-insured banks.

12.     In the event that the insuring Defendants failed to timely honor their obligations to make payments on individual policyholders' accounts in the event of a claim on a credit life of credit disability policy, the banking Defendants stood to profit financially through the imposition of late fees and increased interest rates on the accounts of its deceased or disabled customers.

13.     The income generated from the imposition of late fees and increased interest rates is a substantial source of revenue for the banking Defendants.

14.     By virtue of the fact that: (a) the banking Defendants received undisclosed monetary compensation for inducting its customers to purchase credit life and credit disability insurance from the insuring Defendants; and (b) the banking Defendants also profited financially from the non-performance or untimely performance of the insuring Defendants, there is an inherent conflict between the interests of the banking Defendants and the interests of the individual policyholders.

15.     The conflict of interest on the part of the banking Defendants was not disclosed to the Plaintiffs or any other individual policyholders.

(Second Am. Pet., ¶ 12-15).  Despite the fact that usury law is solely statutory in Oklahoma, Plaintiffs mention no Oklahoma or federal statute governing usurious interest, nor do they anywhere reference a claim of "usury."  Plaintiffs instead make two claims regarding the interest.  First, Plaintiffs allege the late fees and increased interest would not have been charged but for the insuring defendants failure to honor their obligations under the credit disability policy.  Second, Plaintiffs allege that an undisclosed conflict of interest existed at the time Plaintiffs entered into a contract for insurance with Defendants because the banking defendants – who market the insurance coverage – profit when claims made pursuant to the coverage are not timely paid.  Neither of these claims can be fairly construed as a usury claim, *i.e.*, a claim for unlawfully high interest charges.

Because Plaintiffs have not explicitly – nor implicitly – asserted state law usury claims, there are no claims which are subject to preemption by federal law. Therefore, this case involves no federal question.

### 2.      Diversity Jurisdiction

Defendants claim that, even in the absence of federal question jurisdiction, diversity jurisdiction exists which makes the case removable.  Defendants contend that this Court has original jurisdiction over this action based upon 28 U.S.C. § 1332, which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a)(1).  Plaintiffs do not contests Defendants' assertion that the parties are completely diverse, however, Plaintiffs argue that Defendants' Notice of Removal fails to establish that more than $75,000 is in controversy.  The Court is thus left to determine only whether Defendants' Joint Notice of Removal establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000.

In *Laughlin v. Kmart Corp.*, the Tenth Circuit Court of Appeals set forth the framework by which district courts in this circuit should measure whether the amount in controversy requirement has been satisfied:

> The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal. The burden is on the party requesting removal to set forth, in the notice of removal itself, the 'underlying facts supporting [the] assertion that the amount in controversy exceeds [$75,000].' Moreover, there is a presumption against removal jurisdiction.

50 F.3d 871, 873 (10th Cir. 1995) (citations omitted) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992)).  As *Laughlin* makes clear, the amount in controversy "must be affirmatively

established on the face of either the petition or the removal notice." *Id*. Moreover, "at a minimum. . . the jurisdictional amount [must] be shown by a preponderance of the evidence." *Martin v. Franklin Capital Corp*., 251 F.3d 1284, 1290 (10th Cir. 2001), *cert. granted*, 544 U.S. 998 (2005), *aff'd*, 546 U.S. 132 (2005).  As the Tenth Circuit Court of Appeals observed in *Martin*, "defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when a plaintiff has filed suit in federal court with a claim that, on its face, satisfies the amount in controversy requirement, removal statutes are construed narrowly." *Id*. at 1289-1290.

In their Second Amended Petition, Plaintiffs seek actual damages "in excess of Ten Thousand Dollars ($10,000) on each count," punitive damages in an amount "equal to the increased financial benefit derived by Defendants as a result of their wrongful conduct," pre- and post-judgment interest, costs, and attorneys' fees. As Defendants point out:

> On its face, the Plaintiffs' second Amended Petition claims a **minimum** of an amount greater than fifty thousand dollars ($50,000.00) in damages, comprised of the four individual counts for compensatory damages in excess of ten thousand dollars ($10,000.00) and the claim for punitive damages in excess of ten thousand dollars ($10,000.00).  When combined with the demand for attorneys' fees, the second Amended Petition establishes on its face that it is more likely than not that Plaintiffs are seeking an amount in excess of seventy-five thousand dollars ($75,000.00). . . .

(Notice of Removal, ¶ 48)(emphasis in original).  Despite the fact that the Second Amended Petition establishes that at least $50,000 is in controversy, it does not establish that an amount greater than $75,000 is in controversy. Defendants therefore bear the burden of setting forth in their Notice of Removal sufficient underlying facts to support their assertion that the amount in controversy exceeds the jurisdictional limit. *See Barber v. Albertsons, Inc.*, 935 F. Supp.1188, 1192 (N.D. Okla.1996) ("[T]he plain language of *Laughlin* requires a removing defendant to set forth, in the removal

documents, not only the defendant's good faith belief that the amount in controversy exceeds [$75,000], but also facts underlying defendant's assertion.").

Defendants attempt to make the required showing by asserting in their Notice of Removal that "awards for punitive damages in similar cases, standing alone, have far exceeded the jurisdictional benchmark" and that "awards for attorneys' fees in bad faith cases can be substantial." (Notice of Removal, ¶ 17).  As the Ninth Circuit Court of Appeals noted in *Gaus*, however, a defendant's "magical incantation" that the amount in controversy exceeds the jurisdictional minimum "neither overcomes the 'strong presumption' against removal jurisdiction, nor satisfies [the defendant's] burden of setting forth, in the removal petition itself, the underlying facts supporting its assertion that the amount in controversy exceeds [$75,000]." 980 F.2d at 567. Under *Laughlin*, a removing defendant must also provide sufficient underlying facts to prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.

Defendants argue that Plaintiffs' reliance on Oklahoma's punitive damages statute (Okla. Stat. tit. 23, § 9.1(C)(2)(c)), allowing recovery of punitive damages in an amount equal to the increased financial benefit derived by the defendant or insurer as a direct result of the conduct causing the injury to the plaintiff and other persons or entities "suggest[s]" that Plaintiffs are seeking more than $500,000 in punitive damages because § 9.1(C)(2) allows recovery of the greater of those two amounts.  Defendants, however, have provided no underlying *facts* which this Court might use to determine whether that "suggestion" is true.  Further, Defendants' reliance on the punitive damages claim to meet their burden is misplaced.  The mere possibility that punitive damages could exceed the jurisdictional amount is not enough to meet the burden of establishing federal court jurisdiction.  *Ortega v. CUNA Mutual Group*, No. 06-CV-23-TCK-PJC, 2007 U.S. Dist. LEXIS

53224, at *9-10 (N.D. Okla. July 23, 2007); *Mamah v. American Loss Mitigation Consortium of Altlanta*, No. CIV-06-338-JHP, 2006 U.S. Dist. LEXIS 76302, at *7 (E.D. Okla. Oct. 12, 2006); *Lightle v. Hartford Ins. Co. of Midwest*, No. 06-CV-140-CVE-FHM, 2006 U.S. Dist. LEXIS 22007, at *2 (N.D. Okla. April 19, 2006).

Nevertheless, as other cases in this district have made clear, "if the face of the petition does not affirmatively establish that the amount in controversy exceeds [$75,000], then the rationale of *Laughlin* contemplates that the removing party will undertake to perform an economic analysis of the alleged damages with underlying facts." *Barber*, 935 F. Supp. at 1192.  Defendants, however, opted to remove the present action to this Court without the benefit of any underlying economic analysis or specific facts establishing – or even estimating – the value of the increased financial benefit derived from the complained-of conduct.  Thus, the Court is left with a scant factual basis for Defendants' assertion that the punitive damages claim pushes the amount in controversy over the $75,000 threshold.

Defendants seek to justify this lack of factual basis by first pointing to Plaintiffs' refusal to stipulate that the amount of damages does not exceed $75,000.  But Defendants present no authority for the proposition that a plaintiff must make the type of stipulation Defendants sought in order to defeat a Notice of Removal.  *Treat v. Liberty Ins. Corp.*, 2007 WL 3407165, at *3 (N.D. Okla. 2007).  Indeed, the burden is on the *removing* party to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.

Citing Okla. Stat. tit. 12 § 2008(A)(2), Defendants argue that claims for damages arising out of a breach of contract must be pled with specificity.  However, Plaintiffs' failure to plead the value of the breach of contract claim with specificity, standing alone, is not enough to establish that the

claim satisfies the jurisdictional prerequisite.  Unlike *Slover*, which involved a life insurance policy with a face value of $100,000, the instant case involves a credit disability insurance policy and one must look to the particular facts to determine whether the amount in controversy exceeds $75,000.

As a whole, Defendants have not presented the type of factual analysis of Plaintiffs' claims for damages required by *Laughlin*.  Defendants have not undertaken any economic analysis beyond conclusory assertions.  The Notice of Removal does not contain an attempt to quantify the alleged fees or to provide a factual basis for the alleged amount.

Therefore, in light of the presumption against removal and the requirement that removal statutes be narrowly construed, the Court concludes that the Defendants have not met their burden to prove by at least a preponderance of the evidence that the amount in controversy in this case exceeds $75,000, exclusive of interests and costs. As such, this Court lacks original subject matter jurisdiction over this action and must remand the case to state court pursuant to 28 U.S.C. § 1447(c).

**WHEREFORE**, the Motion to Remand [Document No. 43] is **granted**.  The Court hereby directs the Court Clerk to remand this case to the District Court in and for Creek County.

**IT IS SO ORDERED** this 29th day of March 2008.


Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

11